IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
WESTERN DIVISION

| | |
|---|---|
| WILLIAM CHARLES WILLETT,<br><br>Plaintiff,<br>vs.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>Defendant. | No. C15-4036-LTS<br><br>**MEMORADUM OPINION AND ORDER ON REPORT AND RECOMMENDATION** |

## I.   INTRODUCTION

This case is before me on a Report and Recommendation (R&R) by the Honorable C.J. Williams, United States Magistrate Judge. *See* Doc. No. 16. Judge Williams recommends that I affirm a decision of the Commissioner of Social Security (the Commissioner) denying plaintiff William Charles Willett supplemental security income benefits (SSI) under Title XVI of the Social Security Act, 42 U.S.C. § 401 et seq. (Act).

Willett has filed timely objections (Doc. No. 17) to the R&R. The Commissioner has not filed a response. The procedural history and relevant facts are set forth in the R&R and are repeated herein only to the extent necessary.

## II.   APPLICABLE STANDARDS

### A.   *Judicial Review of the Commissioner's Decision*

The Commissioner's decision must be affirmed "if it is supported by substantial evidence on the record as a whole." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . ."). "Substantial

evidence is less than a preponderance, but enough that a reasonable mind might accept as adequate to support a conclusion." *Lewis*, 353 F.3d at 645. The Eighth Circuit explains the standard as "something less than the weight of the evidence and [that] allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal." *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994).

In determining whether the Commissioner's decision meets this standard, the court considers "all of the evidence that was before the ALJ, but it [does] not re-weigh the evidence." *Wester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005). The court considers both evidence which supports the Commissioner's decision and evidence that detracts from it. *Kluesner v. Astrue*, 607 F.3d 533, 536 (8th Cir. 2010). The court must "search the record for evidence contradicting the [Commissioner's] decision and give that evidence appropriate weight when determining whether the overall evidence in support is substantial." *Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003) (citing *Cline v. Sullivan*, 939 F.2d 560, 564 (8th Cir. 1991)).

In evaluating the evidence in an appeal of a denial of benefits, the court must apply a balancing test to assess any contradictory evidence. *Sobania v. Sec'y of Health & Human Servs.*, 879 F.2d 441, 444 (8th Cir. 1989). The court, however, does not "reweigh the evidence presented to the ALJ," *Baldwin*, 349 F.3d at 555 (citing *Bates v. Chater*, 54 F.3d 529, 532 (8th Cir. 1995)), or "review the factual record de novo." *Roe v. Chater*, 92 F.3d 672, 675 (8th Cir. 1996) (citing *Naber v. Shalala*, 22 F.3d 186, 188 (8th Cir. 1994)). Instead, if, after reviewing the evidence, the court finds it "possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, [the court] must affirm the [Commissioner's] denial of benefits." *Kluesner*, 607 F.3d at 536 (quoting *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008)). This is true even if the court "might have weighed the evidence differently."

*Culbertson*, 30 F.3d at 939 (quoting *Browning v. Sullivan*, 958 F.2d 817, 822 (8th Cir. 1992)). The court may not reverse the Commissioner's decision "merely because substantial evidence would have supported an opposite decision." *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984); *see Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005) ("[A]n administrative decision is not subject to reversal simply because some evidence may support the opposite conclusion.").

## B. *Review of Report and Recommendation*

A district judge must review a magistrate judge's R&R under the following standards:

> Within fourteen days after being served with a copy, any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

28 U.S.C. § 636(b)(1); *see also* Fed. R. Civ. P. 72(b). Thus, when a party objects to any portion of an R&R, the district judge must undertake a de novo review of that portion.

Any portions of an R&R to which no objections have been made must be reviewed under at least a "clearly erroneous" standard. *See, e.g.*, *Grinder v. Gammon*, 73 F.3d 793, 795 (8th Cir. 1996) (noting that when no objections are filed "[the district court judge] would only have to review the findings of the magistrate judge for clear error"). As the Supreme Court has explained, "[a] finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer City*, 470 U.S. 564, 573 74 (1985) (quoting *United States v. U.S. Gypsum Co.*,

333 U.S. 364, 395 (1948)). However, a district judge may elect to review an R&R under a more-exacting standard even if no objections are filed:

> Any party that desires plenary consideration by the Article III judge of any issue need only ask. Moreover, while the statute does not require the judge to review an issue *de novo* if no objections are filed, it does not preclude further review by the district judge, sua sponte or at the request of a party, under a *de novo* or any other standard.

*Thomas v. Arn*, 474 U.S. 140, 150 (1985).

### III. THE R&R

Judge Williams reviewed the ALJ's residual functional capacity (RFC) and credibility determinations. He began by explaining the concept of a claimant's RFC:

> A claimant's RFC is the most a claimant can do, taking into account his limitations. The ALJ must consider all relevant medical and other evidence in the record to determine a claimant's RFC. 20 C.F.R. § 416.945(a)(1). While the RFC determination draws from medical sources, the RFC is ultimately an administrative decision reserved to the Commissioner. *Cox v. Astrue*, 495 F.3d 614, 619 (8th Cir. 2007). Medical records, physician observations, and the claimant's subjective statements about his capabilities may be used to support the ALJ's RFC finding. *Partee v. Astrue*, 638 F.3d 860, 865 (8th Cir. 2011). The claimant has the burden of proof to establish his RFC. *Goff*, 421 F.3d at 790.

Doc. No. 16 at 8. Judge Williams found that the ALJ's RFC findings were supported by substantial evidence. *Id.* Among other things, he concluded that the opinions of Michael P. Baker, Ph.D., and consultative examiners Jan Hunter, D.O., and John Tedesco, Ph.D., support the RFC. *Id.* at 8-9.

In reviewing the ALJ's credibility determination, Judge Williams explained the standards as follows:

> The ALJ also evaluated Willett's subjective allegations properly, within the framework established by the Commissioner's regulations and *Polaski v. Heckler*, 739 F.2d 1320 (8th Cir. 1984). AR 16-17. In determining a claimant's credibility, an ALJ must consider:

> (1) the claimant's daily activities;
>
> (2) the duration, intensity, and frequency of pain;
>
> (3) the precipitating and aggravating factors;
>
> (4) the dosage, effectiveness, and side effects of medication; and
>
> (5) any functional restrictions.
>
> *Polaski*, 739 F.2d at 1322; *see also* 20 C.F.R. § 416.929(c)(3). "Other relevant factors include the claimant's relevant work history, and the absence of objective medical evidence to support the complaints." *Mouser v. Astrue*, 545 F.3d 634, 638 (8th Cir. 2008) (quoting *Wheeler v. Apfel*, 224 F.3d 891, 895 (8th Cir. 2000)).
>
> Although an ALJ may not discount a claimant's subjective complaints solely because they are unsupported by objective medical evidence, the lack of such evidence is a factor the ALJ may consider. *Halverson*, 600 F.3d at 931-32; *Ford v. Astrue*, 518 F.3d 979, 982 (8th Cir. 2008). A claimant's credibility is "primarily for the ALJ to decide, not the courts." *Pearsall v. Massanari*, 274 F.3d 1211, 1218 (8th Cir. 2001). Thus, the court must "defer to the ALJ's determinations regarding the credibility of testimony, so long as they are supported by good reasons and substantial evidence." *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005). An ALJ may discount a claimant's subjective complaints if there are inconsistencies in the record as a whole. *Id*. The ALJ need not discuss each *Polaski* factor if the ALJ "acknowledges and considers the factors before discounting a claimant's subjective complaints." *Moore v. Astrue*, 572 F.3d 520, 524 (8th Cir. 2009).

*Id*. at 9-10. Judge Williams found that the ALJ properly assessed Willett's credibility. Among other things, Judge Williams made note of (a) the absence of medical records providing objective support for Willett's complaints and (b) Willett's failure to seek treatment. *Id*.

5

## IV. DISCUSSION

### A. *Willett's Objections*

Willett objects to Judge Williams' findings that (1) the ALJ properly determined Willett's RFC and (2) the ALJ properly evaluated his credibility. Doc. No. 17. I will review these issues de novo.

### B. *The RFC Determination*

#### 1. *The ALJ's Findings*

The ALJ found that Willett had the RFC to perform a full range of work at all exertional levels but with the following restrictions:

> The claimant must avoid concentrated exposure to fumes, odors, dusts, gases, environments with poor ventilation, cold temperature extremes, extreme wetness, and humidity; he can perform simple tasks that are not performed in a fast-paced production environment or as an integral part of a team, involving relatively few work place changes.

AR 16. In determining Willett's RFC, the ALJ gave significant weight to the opinion of Michael P. Baker, Ph.D. *Id.* The ALJ gave some weight to the opinions of state agency medical consultants Jan Hunter, D.O., and John May, M.D., finding they were consistent with the record as a whole. *Id.* The ALJ gave significant weight to the opinions of state agency psychological consultant John Tedesco, Ph.D., and Scott Shafer, Ph.D. *Id.* AR 19-20. The ALJ gave little weight to the opinion of Jeffrey Zoelle, M.D., because Dr. Zoelle provided a check-box form opinion with no explanation and addressed a matter reserved to the Commissioner. *Id.* at 20-21. The ALJ also considered a letter and a function report from third parties. *Id.* at 20.

#### 2. *Analysis*

Willett argues that the ALJ's RFC is not supported by substantial evidence because it does not address (a) Willett's inability to follow directions and work with appropriate

concentration, persistence and pace, or (b) his difficulty interacting with co-workers and the general public. Willett also argues that his Global Assessment of Functioning[1] (GAF) scores support a finding of disability and contends that the ALJ failed to take them into consideration.

I find no error in the ALJ's RFC analysis. With regard to GAF scores, the ALJ noted that Willett had received two recent scores of 65, indicating only mild symptoms.[2] AR 18-19. While the record contains evidence of other, lower GAF scores, his more-recent scores reflect a lack of disabling impairments. Moreover, while GAF scores may be relevant in determining a claimant's RFC, they are not controlling. *See Halverson v. Astrue*, 600 F.3d 922, 930–31 (8th Cir. 2010) (a GAF score may be of considerable help in formulating the RFC but is not essential to the RFC's accuracy); *see also Jones v. Astrue*, 619 F.3d 963, 973 (8th Cir. 2010) ("[W]e are not aware of any statutory, regulatory, or other authority requiring the ALJ to put stock on a [GAF] score."). Here, I find no error in the ALJ's evaluation of Willett's GAF scores.

I further find that the evidence of record supports the ALJ's RFC findings. For example, on October 1, 2013, Willett was examined at the Siouxland Mental Health Center by Charles Tilley, MPAS, PA-C. AR 318. Tilley noted that Willett was cooperative, pleasant and made good eye contact with no obvious abnormal neurologic

---

[1] A GAF score represents a clinician's judgment of an individual's overall ability to function in social, school, or occupational settings, not including impairments due to physical or environmental limitations. *See American Psychiatric Ass'n, Diagnostic & Statistical Manual of Mental Disorders* 34 (4th ed.) (DSM-IV).

[2] A GAF score of 61-70 indicates the individual has some mild symptoms (*e.g.*, depressed mood and mild insomnia) or some difficulty in social, occupational, or school functioning (*e.g.*, occasional truancy, or theft within the household), but is generally functioning pretty well and has some meaningful interpersonal relationships. *See* DSM-IV at 34.

movements. AR 320. Tilley estimated Willett's intellectual ability as "mildly MR" but found that he had a goal-directed thought process, which was logical for the most part and coherent. *Id.* Tilley reported that Willett denied suicidal ideation or homicidal intent or plan and had fair insight and judgment. *Id.* Tilley assigned a GAF score of 65 but concluded that it would be difficult for Willett to maintain even a part-time job. AR 320-21.[3]

Dr. Baker's opinion, which is based on a consultative examination that occurred on October 8, 2012, also supports the ALJ's RFC. AR 301. Dr. Baker noted that Willett maintained good eye contact, suffered no delusional thought content and was alert and oriented. AR 300. Dr. Baker found that Willett had fair concentration and adequate recall and memory. AR 301. Dr. Baker noted that Willett was cooperative throughout the examination and found that Willett's insight and judgment, while immature, were not impaired. *Id.* In determining mental limitations related to work activities, Dr. Baker found that Willett had the "ability to remember and understand instructions, procedures and locations for fairly simple nondemanding tasks." *Id.* Dr. Baker further found that Willett would have the ability to maintain adequate attention, concentration and pace for carrying out instructions and that he could interact appropriately with supervisors, coworkers and the public if the work was not too demanding. *Id.* Given a low-stress work environment, Dr. Baker opined that there would be no reason to expect any problems associated with judgment or appropriate responses to changes in the workplace. *Id.* Finally, Dr. Baker assigned a GAF score of 60. AR 302.

In addition, the ALJ's RFC determination is consistent with the state agency consultants' opinions. Having reviewed the entire record, I find that the ALJ's RFC

---

[3] The ALJ discounted Tilley's statement concerning Willett's inability to work on grounds that it was based on a one-time assessment, was "far different" from prior examinations and was based on complaints not supported by the record. AR 19. I find no error in the ALJ's evaluation of Tilley's opinion.

8

findings are supported by substantial evidence. Willett's objection to this portion of the R&R is overruled.

## C. The Credibility Assessment

Willett argues that the ALJ's credibility assessment is not supported by substantial evidence. He contends that the ALJ erroneously discounted a treatment history that, according to Willett, supports his subjective complaints. Willett also argues that the ALJ improperly relied on the sporadic nature of his recent treatment history, contending that a sporadic treatment history is typical when dealing with mental health impairments.

The ALJ referenced the relevant factors for considering a claimant's credibility and then explained his reasons for discounting Willett's credibility. The ALJ noted that after applying for benefits, Willett did not seek treatment until shortly before the administrative hearing. AR 17. Even then, Willett sought only an evaluation, not medication or treatment. *Id*. The ALJ further noted that in contrast to Willett's claim that he is unable to work because of anxiety, poor focus, social problems and respiratory problems, during a consultative examination in 2012 he stated that he was unable to work because he gets bored doing the same job. AR 17, 301; *see Raney v. Barnhart*, 396 F.3d 1007, 1011 (8th Cir. 2005) (finding no error when the ALJ to consider "inconsistent statements to medical professionals" in assessing credibility).

Willett argues that it is error for an ALJ to use a claimant's failure to seek medical treatment as a factor in assessing credibility when the impairment involves mental health. The Eighth Circuit has held that the failure to seek treatment, while not dispositive, may indicate the relative seriousness of a medical problem. *Shannon v. Chater*, 54 F.3d 484, 486 (8th Cir. 1995) (finding no error when claimant's subjective complaints about his knee pain were not found credible due to a failure to seek medical treatment). However, the court has also recognized that a mentally ill claimant's noncompliance with medication and treatment, or failure to seek treatment, may be a result of the mental impairment.

9

*See, e.g., Conklin v. Astrue*, 360 F. App'x 704, 706 (8th Cir. 2010). Thus, in cases involving mental impairments, the ALJ must take care not to place too much emphasis on the claimant's failure to seek treatment.

Here, I find no error in the ALJ's analysis. The ALJ relied on several factors – not just the lack of treatment – in discounting the credibility of Willett's subjective complaints. These factors included Willett's inconsistent statements as to why he could not work and the fact that the available opinion evidence does not support Willett's claim of disabling symptoms. Moreover, the ALJ was not required to ignore the curious timing and nature of Willett's decision to seek an evaluation. Willett applied for SSI in July 2012 and did not have an administrative hearing until October 16, 2013. AR 11. During that nearly 15-month period of time, while allegedly suffering from disabling impairments, Willett sought no treatment or medication. He instead sought an evaluation (but not treatment) shortly before the hearing. AR 318-21.

In short, I find that the ALJ appropriately considered the *Polaski* factors and provided good reasons for his decision to discredit Willett's subjective complaints. As such, there is no basis to disturb the ALJ's credibility determination. *Johnson v. Apfel*, 240 F.3d 1145, 1148 (8th Cir. 2001). Willett's objection to this portion of the R&R is overruled.

## V. CONCLUSION

For the reasons set forth herein:

1. Willett's objections (Doc. No. 17) to the magistrate judge's report and recommendation are **overruled**;
2. I **accept** United States Magistrate Judge Williams' May 13, 2016, report and recommendation (Doc. No. 16) without modification. *See* 28 U.S.C. § 636(b)(1).
3. Pursuant to Judge Williams' recommendation:

a. The Commissioner's determination that Willett was not disabled is **affirmed**; and

b. Judgment shall enter against Willett and in favor of the Commissioner.

**IT IS SO ORDERED.**

**DATED** this 2nd day of September, 2016.

_____
LEONARD T. STRAND
UNITED STATES DISTRICT JUDGE